2016 OCT 31 AM 9: 43



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | DIVISION ONE |
| Respondent, | No. 74037-7-I |
| v. | UNPUBLISHED OPINION |
| NICHOLAS DEON CLOYD, | |
| Appellant. | FILED: October 31, 2016 |

DWYER, J. — Following a jury trial in King County Superior Court, Nicholas Cloyd was convicted of one count of violation of the Uniform Controlled Substances Act[1] for delivery of cocaine. He now appeals, contending that he was deprived of his right to a unanimous jury verdict. This is so, he claims, because the State presented evidence of two unlawful acts but did not elect which act constituted the charged delivery and the trial court did not give an instruction requiring the jury to be unanimous as to which act it based its verdict on. Because, under the facts of this case, the State was not obligated to elect a specific act for conviction and the trial court was not required to issue such an instruction, we affirm.

---

[1] Ch. 69.50 RCW.

I

On July 22, 2013, Nicholas Cloyd was arrested during an undercover operation executed by the Seattle Police Department's Anti-Crime Team. During the operation, undercover officer Andrew Zwaschka was positioned on a street in the Belltown neighborhood to solicit the purchase of narcotics. Support officers trailed Zwaschka, from various vantage points, by five to seven seconds throughout the operation. Eventually, Zwaschka was led to a parked vehicle where Cloyd was sitting in the front, passenger-side seat. The vehicle's windows were tinted and the passenger-side window was rolled down a couple of inches.

Zwaschka approached the vehicle and Cloyd asked, "what are you looking for?" Zwaschka responded, "twenty hard" and attempted to hand Cloyd twenty dollars. Cloyd told Zwaschka, "[n]o, no, no. You're going to deal with the girl," while he poured small, white rocks of crack cocaine into the palm of his hand from a container. Through the cracked window, Zwaschka observed Cloyd handing the rocks in his hand to "the girl," who was sitting in the driver's seat. This woman, later identified as Erika Frunk, then got out of the car and sold the narcotics to Zwaschka. The trailing officers did not witness Zwaschka and Cloyd's interaction, but did observe the exchange between Zwaschka and Frunk.

At trial, the jury was instructed that, "[b]ecause this is a criminal case, each of you must agree for you to return a verdict." Instruction 13. There was no unanimity instruction related to the specific acts alleged. The trial court's instructions to the jury also included an instruction regarding accomplice liability:

> A person is an accomplice in the commission of a crime if, with knowledge that it will promote or facilitate the commission of the crime, he or she either:
> (1) solicits, commands, encourages, or requests another person to commit the crime; or
> (2) aids or agrees to aid another person in planning or committing the crime.

Instruction 11. Cloyd did not propose any jury instructions but, rather, adopted the instructions proposed by the State.

It was the State's theory that Cloyd engaged in two deliveries, either directly or as an accomplice, and that the State provided evidence of both deliveries—Cloyd's delivery to Frunk and Frunk's delivery to Zwaschka. Neither Cloyd nor Frunk testified at trial. The jury convicted Cloyd, as charged, with one count of violation of the Controlled Substances Act for delivery of cocaine.

## II

Cloyd contends that he was deprived of his right to a unanimous jury verdict. This is so, he asserts, because the State presented evidence of two acts but did not elect which act constituted the charged delivery, and the trial court did not give an instruction requiring the jury to be unanimous as to which act it found to be proved. We disagree.

The Washington Constitution provides a criminal defendant with the right to a unanimous jury verdict. WASH. CONST. art. I, § 22; State v. Furseth, 156 Wn. App. 516, 519, 233 P.3d 902 (2010). Therefore, an alleged denial of this right may be raised for the first time on appeal. State v. Gooden, 51 Wn. App. 615, 617, 754 P.2d 1000 (1988).

"Where the evidence indicates that more than one distinct criminal act has been committed but the defendant is charged with only one count of criminal conduct, the jury must be unanimous as to which act or incident constitutes the charged crime." Furseth, 156 Wn. App. at 519-20 (citing State v. Noltie, 116 Wn.2d 831, 842-43, 809 P.2d 190 (1991)). In such cases, "either (1) the State must elect a specific act on which it will rely for conviction or (2) the trial court must instruct the jury that it must unanimously agree that a specific criminal act has been proved beyond a reasonable doubt." Furseth, 156 Wn. App. at 520 (citing State v. Bobenhouse, 166 Wn.2d 881, 893, 214 P.3d 907 (2009)). However, if the evidence proves that the defendant was engaged in a "continuing course of conduct," the State need not elect a specific act, nor need the trial court instruct the jury that it must be unanimous as to the act proved. State v. Fiallo-Lopez, 78 Wn. App. 717, 724, 899 P.2d 1294 (1995) (citing State v. Handran, 113 Wn.2d 11, 17, 775 P.2d 453 (1989)).

To determine whether the criminal conduct constitutes a continuing course of conduct, we review the evidence in a commonsense manner. Fiallo-Lopez, 78 Wn. App. at 724 (citing Handran, 113 Wn.2d at 17). Evidence that the conduct occurred at different times and in different places supports a showing of several distinct acts. Fiallo-Lopez, 78 Wn. App. at 724 (citing Handran, 113 Wn.2d at 17). Conversely, evidence that the defendant engaged in a series of actions to attain the same objective supports a continuing course of conduct. Fiallo-Lopez, 78 Wn. App. at 724 (citing State v. Handran, 113 Wn.2d at 17).

Viewed in a commonsense manner, the acts alleged demonstrate a continuing course of conduct. The acts (1) occurred in the same place, (2) happened within a short period of time, and (3) demonstrate a single objective. First, all of the acts occurred at the location at which the vehicle was parked. The first act occurred inside the vehicle and the second act occurred a few steps away from that vehicle. Second, the acts occurred in a short period of time. Indeed, the trailing officers were five to seven seconds behind Zwaschka and were able to observe the interaction between Zwaschka and Frunk, which occurred immediately after Cloyd's interaction with Zwaschka. Third, the evidence supports the inference that both of the acts furthered a single objective: delivering narcotics to Zwaschka. To complete the exchange, Cloyd handed Frunk the narcotics and Frunk then gave the narcotics to Zwaschka in exchange for money.

Cloyd attempts to distinguish the deliveries herein from the continuing course of conduct at issue in Fiallo-Lopez. In Fiallo-Lopez, the defendant was convicted of delivery and possession of cocaine. 78 Wn. App. at 723. The defendant therein delivered different amounts of cocaine to an undercover officer, on the same evening, at two separate locations: first, at a Mexican restaurant and then in the parking lot of a grocery store. Fiallo-Lopez, 78 Wn. App. at 720-23. We held that the evidence showed that the narcotics transaction was a continuing course of conduct because it involved the same parties, had the same ultimate purpose of delivering narcotics to the buyer, and the delivery of

the cocaine at the Mexican restaurant was preliminary to the second delivery at the grocery store. Fiallo-Lopez, 78 Wn. App. at 725-26.

Cloyd asserts that the acts herein were distinct because a juror could have doubted whether both acts occurred. Therefore, he claims, the first delivery was not "preliminary" to the second delivery. However, neither Cloyd nor Frunk testified at trial, leaving Zwaschka's testimony uncontradicted. Indeed, the sole distinguishing fact between Fiallo-Lopez and this case is that Fiallo-Lopez's deliveries occurred in two separate locations whereas the acts herein occurred in the same location. This disparity does not favor Cloyd's assertion.[2] Viewed in a commonsense manner, the evidence established that the first delivery herein was preliminary to the second. Pursuant to the rule discussed in Fiallo-Lopez, the two deliveries were part of the same continuing course of conduct.[3]

There was no trial court error.

## IV

Cloyd requests that no costs be assessed against him on appeal. Pursuant to RAP 14.2, we have the discretion not to impose appellate costs. The State does not contest his claim. Accordingly, pursuant to State v. Sinclair, 192 Wn. App. 380, 393, 367 P.3d 612, review denied, 185 Wn.2d 1034 (2016), we exercise our discretion and will not impose appellate cost against Cloyd.

---

[2] Neither does it support Cloyd's claim that a constitutionally insufficient quantum of evidence was presented to prove both acts. Sufficient evidence was proffered to establish each.

[3] Cloyd's assertion that the doctrine of judicial estoppel applies herein is wrong. Our review is necessarily based on the evidence presented and its sufficiency to support the verdict. Because there was no prosecutorial election, the State's closing argument does not bear on the question presented.

Affirmed.

We concur: