FILED
11/16/2020
Court of Appeals
Division I
State of Washington

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 80593-2-I |
| Respondent, | |
| v. | DIVISION ONE |
| DONALD JOSE DAVID ZEPEDA, | UNPUBLISHED OPINION |
| Appellant. | |

CHUN, J. — Donald Zepeda went to a pipeline facility to shut off the pipeline and stop the transportation of tar sands oil from Canada to Washington State. He cut a chain to enter the facility and tried to cut a U-bolt that secured the shutoff valve. The State charged him with second-degree burglary, attempted criminal sabotage, and malicious mischief. A jury found him guilty on all counts. He appeals the attempted criminal sabotage and malicious mischief convictions. We affirm.

BACKGROUND

Inspired by the "valve turner" movement, Zepeda, a climate activist, sought to shut off a pipeline carrying tar sands oil from Canada to Washington. His wished to delay the transportation of oil, bring awareness to the damaging impacts of fossil fuels, encourage others to become involved in the movement, and trigger policy changes.

Citations and pin cites are based on the Westlaw online version of the cited material.

After doing his research, Zepeda drove from Michigan to Washington where he arrived at a Kinder Morgan pipeline facility around 10 a.m. on October 24, 2017. He used industrial bolt cutters to cut through a chain securing a fence at the perimeter of the facility. A group of employees and contractors at the facility saw Zepeda and called out to him. He did not respond and went to the shutoff valve. In accordance with company protocol, instead of attempting to engage with Zepeda, the employees called law enforcement and documented Zepeda's actions.

Because of a similar event the year before, the company had outfitted the shutoff valve with a U-bolt to prevent unauthorized personnel from accessing it. Zepeda tried unsuccessfully to cut through the U-bolt with bolt cutters until deputy sheriffs arrived. Zepeda cooperated with the deputies and explained that he needed to protect the ecosystem by stopping the transportation of "some of the worst kind of oil."

The deputies arrested Zepeda and the State charged him with attempted criminal sabotage, malicious mischief, and second-degree burglary. During trial, the State introduced testimony of three responding deputy sheriffs, testimony of two Kinder Morgan employees, and photographs of the severed chain and Zepeda attempting to cut the U-bolt. Zepeda testified on his own behalf, and introduced the testimony of climate, public policy, and civil disobedience experts. Zepeda did not dispute any of the evidence presented against him. Instead he relied on a necessity defense, emphasizing the dire consequences of climate change.

The jury found Zepeda guilty as charged. Zepeda appeals the attempted criminal sabotage and malicious mischief convictions.

ANALYSIS

A. Jury Unanimity

Zepeda says that he was deprived of his right to a unanimous jury when the State presented evidence of two different acts upon which the jury could base the convictions of attempted criminal sabotage and malicious mischief. He highlights that the State did not elect one of the acts and the court did not give the jury a unanimity instruction. The State counters that the two acts constituted a continuing course of conduct. We agree with the State.

"All criminal defendants are constitutionally entitled to a unanimous jury verdict." State v. Sassen Van Elsloo, 191 Wn.2d 798, 814, 425 P.3d 807 (2018); Ramos v. Louisiana, ___ U.S. ___, 140 S. Ct. 1390, 1396–97, 206 L. Ed. 2d 583 (2020). If the State presents evidence of multiple acts and any one of those acts could form the basis of the count charged, a risk arises that the jury will not be unanimous as to the act that they rely on in finding the defendant guilty. State v. Lee, 12 Wn. App. 2d 378, 392–93, 460 P.3d 701, review denied, 195 Wn.2d 1032, 468 P.3d 622 (2020). Generally, in such a circumstance, the State must elect which act it is relying upon for a conviction or the court must instruct the jury to agree on one of the acts. Id. An exception applies, however, when the acts constitute a "continuing course of conduct." State v. Brown, 159 Wn. App. 1, 14, 248 P.3d 518 (2010). "We use common sense to determine whether criminal conduct constitutes one continuing course of conduct or several distinct acts."

Lee, 12 Wn. App. 2d at 393. We consider "(1) the time separating the criminal acts and (2) whether the criminal acts involved the same parties, location, and ultimate purpose." Brown, 159 Wn. App. at 14.

"Whether or not a unanimity instruction was required in a particular case is a question of law reviewed de novo." Lee, 12 Wn. App. 2d at 393.

Criminal sabotage is generally an intentional interference with a commercial enterprise. RCW 9.05.060. The crime of attempted criminal sabotage requires a substantial step towards that end. RCW 9A.28.020. A person is guilty of malicious mischief if they knowingly and maliciously cause physical damage to the property of another. RCW 9A.48.090. During its closing argument the State said that either the act of cutting the chain to enter the property or the act of trying to cut the U-bolt could be a substantial step towards criminal sabotage. The State also pointed to evidence that both the chain and the U-bolt had been damaged in support of its argument for a malicious mischief conviction. The State did not elect one act as the basis for a conviction and the court did not instruct the jury that it needed to be unanimous as to which act they relied upon.

The trial court did not deprive Zepeda of his right to a unanimous jury because the act of cutting the chain and the act of trying to cut the U-bolt constituted a continuing course of conduct. The two acts were close in time and space. Zepeda cut a chain on the fence that surrounds the property where the shutoff valve is located. He then proceeded to try to cut the U-Bolt. Both acts

4

affected the same party, Kinder Morgan. In addition, both acts carried the same purpose: to shut off the pipeline.

The trial court did not deprive Zepeda of his right to a unanimous jury.

B. Harmless Error

Assuming the trial court erred, the error was harmless. Zepeda says that because the evidence offers a basis for the jury to rationally discriminate between the two acts, the failure to ensure unanimity was prejudicial error requiring reversal. The State responds that because all rational triers of fact would find that the State proved each act beyond a reasonable doubt, any error is harmless. We agree with the State.

"The failure of the State to elect a specific act or the trial court's failure to issue a unanimity instruction in a multiple acts case 'is constitutional error.'" State v. Furseth, 156 Wn. App. 516, 520, 233 P.3d 902 (2010) (quoting State v. Bobenhouse, 166 Wn.2d 881, 893, 214 P.3d 907 (2009)). "[T]he error is harmless only when all rational triers of fact would find that each alleged act was proved beyond a reasonable doubt." State v. Espinoza, No. 79413-2-I, slip op. at 4 (Wash. Ct. App. Oct. 12, 2020), http://www.courts.wa.gov/opinions/pdf/794132.pdf.

The State proved both acts—cutting the chain and attempting to cut the U-bolt—beyond a reasonable doubt. Two employees and two responding deputies all testified that they saw Zepeda trying to cut the U-bolt. Photographic evidence supports this testimony. Also, a deputy testified that Zepeda told him he came through a fence. And an employee testified that he discovered a

5

severed chain on the ground below an opened fence. Zepeda did not dispute any of this evidence and agreed that the events were consistent with the State's witnesses' testimonies. Instead, he relied on a necessity defense. Given the uncontroverted evidence, any rational trier of fact would have found that the State proved both alleged acts beyond a reasonable doubt.

We affirm.

_____Chun, J._____

WE CONCUR:

_____Leach, J._____   _____Appelwick, J._____